**Richard C. ROSEBURY, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 806–82.

Court of Criminal Appeals of Texas, En Banc.

Nov. 9, 1983.

Roy Beene, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., James C. Brough and Randy McDonald, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

ODOM, Judge.

Appellant was convicted by a jury for possession of marihuana in a usable quantity of more than four ounces and punishment was assessed at five years and a $5,000 fine. The Court of Appeals affirmed the conviction and this Court granted appellant's petition for review to consider whether the Court of Appeals properly disposed of the asserted Speedy Trial Act, Art. 32A.02, V.A.C.C.P. violation.

The procedural chronological list of events summarized by the Court of Appeals adequately reflects the problem.

"February 6, 1979: Appellant was arrested after delivering approximately five and one-half pounds of compressed marihuana to undercover officers.

"February 20, 1979: Indictment was returned in Cause No. 291,916, alleging delivery and possession of 'a controlled substance, namely Tetrahydrocannabinols.'

"April 11, 1979: Appellant filed a waiver of speedy trial in Cause No. 291,916.

"July 13, 1979: Appellant pleaded guilty, was sentenced to eight years confinement and gave notice of appeal.

"December 13, 1979: Appellant was granted a new trial pursuant to *Few v. State,* 588 S.W.2d 578 (Tex.Cr.App.1979).

"January 7, 1980: Appellant was reindicted in Cause No. 306,916 for possession of 'Tetrahydrocannabinol other than marihuana.'

"January 18, 1980: Appellant filed a waiver of speedy trial in Cause No. 306,-916.

"August 4, 1980: The State announced ready in Cause No. 306,916. While assembling witnesses for trial, the prosecutor learned from the State's chemist that the controlled substance in question was marihuana.

"August 18, 1980: Appellant was again reindicted in Cause No. 319,011 for possession of 'marihuana in a usable quantity of more than four ounces.' No waiver of a speedy trial was filed.

"September 15, 1980 through November 10, 1980: At a non-trial setting, the case was reset by agreement for November 3, 1980. On November 3, it was reset for November 10, 1980, and on November 10, 1980, was reset for trial December 8, 1980. Testimony showed all resettings were by agreement.

"December 8, 1980: Appellant filed his motion to dismiss for violation of the Speedy Trial Act, which was brought to the court's attention on January 19, 1981.

"December 11, 1980: An agreed trial setting for January 19, 1981, was filed.

"January 19, 1981: Appellant's motion to dismiss for violation of the Speedy Trial Act was overruled with other pretrial motions, and trial commenced."

Appellant does not complain of delays after return of the third indictment on August 18, 1980. In his brief he makes it clear that he complains only of the time period before August 18, arguing that the State could not possibly have been ready for trial before that date because the State had not taken steps to prosecute him for possession of marihuana even though a laboratory report over six months earlier showed the substance possessed was marihuana, not tetrahydrocannabinol, as had been alleged in the first two indictments.

In light of this formulation of the issue by appellant, the focus of consideration must be on whether his waivers of a speedy trial filed under the first two indictments constituted waivers for purposes of the marihuana prosecution. Recognizing the pivotal role of this question in resolving the ground of error, appellant argues that *Richardson v. State,* 629 S.W.2d 164 (Tex.App.— Dallas 1982), controls. In that case the court held that an announcement of ready in one case did not constitute an announcement of ready on a second indictment for a different offense arising out of the same transaction. The reason given for that holding was, "Although both [cases] have the same complaining witness, they are different offenses subject to different proof, and therefore are not the 'same case' even though they are from the same transaction. Consequently, the announcements of ready in one case will not apply to the other case."

In this case the issue is different yet similar. Instead of the scope of effectiveness of an announcement of ready, as in *Richardson,* we consider the scope of effectiveness of appellant's waiver. In relevant part the two form waivers recite:

"I do knowingly and voluntarily waive my rights under the Texas Code of Criminal Procedure to a speedy trial within 120 days from the commencement of this case

... and further waiver my right for dismissal or discharge if the State is not ready for trial within 120 days of the commencement of this case...."

The waiver clearly applies to the case, not the transaction. The issue, therefore, reduces itself to whether the indictments constitute prosecutions for a single case or for separate cases arising out of the same transaction.

In *Richardson,* supra, the two offenses were theft and burglary. These were correctly found to be distinct cases although arising out of a single transaction. Here the first indictments alleged possession of tetrahydrocannabinol while the final indictment alleged possession of marihuana. As in *Richardson,* under statute these are "different offenses subject to different proof." *Richardson,* supra, at 165. Nevertheless, the facts of this case reveal only a single offense: only a single substance was possessed, a substance originally alleged to be tetrahydrocannabinol and subsequently found to be and correctly alleged to be marihuana. Under the facts there was only one case: a single offense was committed and a single offense was alleged, although at first erroneously pleaded. Had appellant possessed both substances a different issue would be presented. On these facts, however, we find *Richardson* distinguishable, and hold appellant's waiver of his rights under the Speedy Trial Act applied to the case, which included the third indictment.

The judgment of the Court of Appeals is affirmed.

McCORMICK and MILLER, JJ., concur in the result.

TEAGUE, J., not participating.

1. Our understanding of the phrase "when an indictment, information, or complaint ... is filed in *court*" is a charging instrument upon which an accused may be tried in the court in which it is filed, rather than one upon which a warrant of arrest may be issued by a *magistrate.* The Second Circuit speedy trial plan is the pattern from which our Act was drawn,

CLINTON, Judge, concurring.

Settled is that time limitations prescribed by the Act pertain to when the State must be ready for trial—not when trial must be held. *Barfield v. State,* 586 S.W.2d 538 (Tex.Cr.App.1979) and *Ordunez v. Bean,* 579 S.W.2d 911 (Tex.Cr.App.1979) (Clinton, concurring). But specifically, when does "a criminal action" commence within the meaning of Article 32A.02, V.A.C.C.P.?

Putting aside for the moment special situations such as retrials, *id.,* § 2(b) and dismissals, § 2(c), usually initiated by an accused, § 2(a) provides that a criminal action commences when an indictment, information or complaint is "filed in court" *unless* the accused has been held to answer for the same offense or any other offense "arising out of the same transaction," and in that case the criminal action commenced when he was first arrested.

Thus it is clear that the legislative objective is to cause the State promptly to sort out its offenses, obtain one or more charging instruments and get ready for trial within the prescribed period of time from commencement of the criminal action. See *Buford v. State,* 657 S.W.2d 107 (Tex.Cr.App.1983) and *Pate v. State,* 592 S.W.2d 620 (Tex.Cr.App.1980), both of which imply that an appropriate charging instrument must be on file in the proper court in order for an announcement of ready to be meaningful and effective.[1]

The implied rationale of *Buford* and *Pate,* supra, comports with the Act. It contemplates that a prior arrest—before an instrument charging an accused with an offense is "filed in court"—will commence a criminal action, the notion being that the State will not be allowed to avoid its duty to be ready timely for trial by simply delaying filing a charging instrument, while an accused remains subject to constraints of cus-

*Barfield v. State,* supra, at 541; *Ordunez v. Bean,* supra, at 917, 919, and in it the government must be ready for trial within six months or whichever came first: arrest, summons or charging instrument. (All emphasis is added by the writer of this opinion unless otherwise indicated.)

tody or bail.[2] Consistent with such notion is the fact that of the ten periods of time that may be excluded only one mentions delay after the "charge is dismissed upon motion of the State or . . . is disposed of by final judgment" and the accused is subsequently "charged with the same offense or another offense arising out of the same transaction," § 4(7). Clearly, then, the statutory mandate is that the State be ready for trial on a charging instrument extant in the file of a court in which the offense is to be tried.

Under the Act readiness on the part of the prosecution must be timely challenged by the accused by a motion to set aside the charging instrument on the only ground available—that the State is not ready for trial. Articles 28.061 and 32A.02, §§ 1 and 3; *Barfield v. State,* supra, at 542. Once that is done the State "must declare its readiness for trial then and at the times required by the Act," *ibid.*—a declaration that the accused may rebut by evidence that the State was not ready for trial "during the Act's time limits," *ibid.* Obviously, a motion to set aside a charging instrument will be filed in, heard and decided by the court having "threshold jurisdiction" to try the alleged offense.[3]

Though the Texas Speedy Trial Act was drawn from the federal scheme promulgated by the Second Circuit, in which the government was required to communicate its readiness to the court within the specified six month period,[4] *Barfield,* supra, at 541; *Ordunez v. Bean,* supra, at 917, 919, we have not imposed upon the prosecution such "a useless thing," "a meaningless and

perfunctory gesture," *Barfield,* supra, at 541. But that is not to say that every announcement of ready is so sterile.

The only allusion to the State's announcing ready for trial one quickly finds in the code of criminal procedure is in connection with a case being called for trial by jury. Article 35.01, V.A.C.C.P. Still, general custom and practice is that as the trial docket is sounded an announcement of ready or not is to be made in each case, and also later when again a particular case is called for trial by court or jury. See 23 Tex.Jur.3rd 126–127, § 2529–2531. And an announcement of ready at the latter time is not only meaningful but also binding throughout the trial that follows except for such an unforeseen extraordinary development that a fair trial cannot be had. Article 29.13, V.A.C.C.P. However, there is no suggestion in the federal plan or our own act that an announcement of ready for trial on an instant indictment in response to call of the court attaches as well to another charging instrument alleging any other offense arising out of the same transaction. Indeed, in *Richardson v. State,* 629 S.W.2d 164 (Tex. App.—Dallas 1982, rev. ref.) the court held otherwise with respect to a November 28, 1979 indictment for an offense arising out of the same transaction for which he had been arrested July 3, 1978.[5]

Appellant relies on *Richardson* and, like the Dallas Court of Appeals, the majority examines the problem in terms of "same case," "single case," and "separate cases." With deference, using that kind of terminology risks being misunderstood, for as

---

**2.** Accord: Cohen, *Senate Bill 1043 and the Right to a Speedy Trial in Texas,* Vol. 1, No. 1 American Journal of Criminal Law (March 1979) 23, 28.

**3.** What is meant here is that the court have at least "jurisdiction" to entertain the charging instrument, not that the instrument be valid in an ultimate jurisdictional sense. See *Ward v. State,* 659 S.W.2d 643 (Tex.Cr.App.1983).

**4.** See note 1, *ante.*

**5.** The Dallas Court of Appeals rejected an argument by the State that "the instant case is

'reindictment' of [a July 26, 1978 indictment] for the offense of theft (3rd degree) arising out of the same transaction as the instant case of burglary of a vehicle," and, therefore, announcements of ready in the earlier theft matter "should be carried forward to the instant case because it is a 'reindictment.' " Because "they are different offenses subject to different proof," the court found they "are not the 'same case' even though they are from the same transaction" and, consequently, announcements of ready in one case "will not apply to the other," *Richardson v. State,* supra, at 165.

demonstrated *ante* the central element identified in the Act is "a criminal action." The Legislature mentions "case" in the Act one time: a delay to allow the State additional time to prepare its "case," § 4(6)(B). When the Legislature choose to treat an arrest as commencement of "a criminal action" and fashioned it to embrace "the same offense or any other offense arising out of the same transaction," it dictated that the State be ready for trial within the prescribed period of time or suffer dismissal of the charging instrument, and it meant such a dismissal to "bar any further prosecution for the offense discharged or for any other offense arising out of the same transaction," Article 28.061, supra. As used by the majority and the court of appeals the concept of "case" is alien to the Act—the mandate is to be ready for trial in a criminal action on a charging instrument alleging an offense. The prescribed period of time for doing so may not be elongated by stringing out successive "reindictments" far beyond the limitations imposed, except when extended by excluding a period the Legislature itself declared is justified, *Cohen,* op. cit., supra, 28, 35–36—unless, of course, the accused validly waives his rights in the premises.

The majority resorts to literal language of the two form waivers executed by appellant in this cause, and discerns that each "clearly applies to the case, not the transaction." I do not agree with that analysis, being of the view that the theory presented by appellant may be resolved through a different approach.

When the situation involves successive charging instruments, our analysis ought to start with the indictment to which a motion to dismiss is directed. Where, as here, arrest preceded indictment, the question to be asked is whether the State was ready for trial on the challenged indictment within 120 days after arrest. If, as here, the State was not ready for trial then we must examine the situation in light of the Act.

Though on July 13, 1979 appellant pleaded guilty, was sentenced and gave notice of appeal, his being granted a new trial December 13, 1979 removes from further consideration for any purpose under the Act all that preceded the grant of new trial. *Id.,* § 2(b):

> "If a defendant is to be retried following ... an order granting a new trial, ... a criminal action commences ... on the date of the order granting a new trial...."

The 120 day period began again December 13, 1979. As I understand it, not only did appellant file a waiver of speedy trial January 18, 1980—well within the time period—but also though trial on the new indictment was set for August 4, 1980, when the State announced ready, and again for August 18, 1980—when appellant says the State announced not ready—appellant never moved for discharge prior to either trial setting, see *id.,* § 3.

In any event, either on August 18 or the next day the prosecution obtained still a third indictment arising out of the same February 6, 1979 transaction. While § 4(7) of the Act excludes a period of delay if the charge is dismissed on motion of the State "from the date of dismissal ... to the date the time limitation would commence running on the subsequent charge had there been no previous charge," that is at best but one day. And since appellant and the State agreed to resettings of the trial from September 15, 1980 through November 10, 1980, that period of time is excluded by *id.,* § 4(3); that appellant makes no complaint that the State was not ready following return of the instant indictment is understandable.

Therefore, our concern is the period from December 13, 1979, to August 18 or 19, 1980. Because on hearing of the motion to set aside indictment the prosecutor in charge of the matter conceded that between February 6, 1979 and August 18, 1980 the State was "never prepared to go to trial on the offense involved against [appellant] for the possession of marijuana [sic]," appellant asserts the trial court should have granted his motion. His contention is that he demonstrated that the State was not ready, in that not until August 4, 1980, did

the prosecutor become aware that the substance seized at the time of his arrest was in fact marihuana rather than, as earlier alleged, tetrahydrocannabinol (THC).

Notwithstanding the fact that the criminal action commenced with the arrest of appellant for delivery of a quantity of marihuana, after grant of new trial it proceeded anew under an indictment for possession of THC. The State's statutory obligation is to be ready for trial on an offense alleged in a charging instrument timely filed, as the second indictment surely was. When, as here, there is but one indictment there is no occasion to test a condition of readiness for trial on an offense not yet alleged in a charging instrument. Nor need there be, for if the State is not ready for trial on the only pending indictment, and it is dismissed for that reason, all other offenses arising out of the same transaction fall with the dismissed indictment. Concomitantly, when, as here, an accused files a written waiver of his right to dismissal for failure of the State to be ready for trial on the only pending indictment, he has effectively relieved the State of its statutory obligation to be ready to try the alleged offense. Here the consequence is that from January 18, 1980, when the waiver was executed until August 13 or 19, 1980, the State, though announcing ready on August 4, was not legally required to be ready for trial on the pending indictment. See *Durrough v. State,* 620 S.W.2d 134, 139–140 [6] (Tex.Cr. App.1981).

For these reasons, I agree that the result reached by the court of appeals is correct. Accordingly, I join in the judgment of this Court.

6. The majority has permitted itself to be lead into resolving a false issue. The question cannot be whether waivers of a speedy trial under the first two indictments also waived a speedy trial under the marihuana indictment, for appellant makes no complaint about delays, to most of which he agreed, after return of the third indictment. His argument that the State be charged with the period of time under the second indictment alleging possession of THC when it should have known that the substance was actually marihuana is specious. Whether the State will prove what it has alleged is a prosecutorial risk. As I have demonstrated, it is quite enough that appellant relieved the State of its obligation to be ready to prove the offense it caused the grand jury to allege, and never put it to the test.